## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DARYL J. CARTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STANLEY W. TAYLOR, individually; | ) | |
| RAPHAEL WILLIAMS, individually; | ) | |
| SITTA B. GOMBEH-ALIE, M.D., | ) | |
| individually; MUHAMMAD ARIF NIAZ, | ) | C.A. No. |
| M.D., individually; CORRECTIONAL | ) | |
| MEDICAL SERVICES, INC., a Missouri | ) | JURY TRIAL DEMANDED |
| corporation; CORRECTIONAL MEDICAL | ) | |
| SERVICES OF DELAWARE, INC., a | ) | |
| Delaware corporation; JOHN DOE | ) | |
| MEDICAL PERSONNEL; and JOHN DOE | ) | |
| CORRECTIONAL PERSONNEL, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

### INTRODUCTION

1.     This is an action to redress the violation of plaintiff's civil rights and failure to provide adequate medical care by the defendants in connection with plaintiff's detention at the Howard R. Young Correctional Institution in Wilmington, Delaware between August 25, 2005 and October 19, 2005.

### JURISDICTION AND VENUE

2.     This Court has subject-matter jurisdiction over this claim pursuant to 28 U.S.C. § 1331 (federal-question jurisdiction), 42 U.S.C. § 1983 (deprivation of civil rights), 42 U.S.C. § 1988 (proceedings in vindication of civil rights), and 28 U.S.C. § 1367(a) (supplemental jurisdiction).

3.     Venue in this District is appropriate pursuant to 28 U.S.C. §§ 1391(b)(1) and (2), in that all defendants reside or transact business in this District and a substantial part of the events and omissions giving rise to this claim occurred in this District.

## PARTIES

4.     Plaintiff Darryl Carter was, at all times relevant herein, housed in the pretrial section of the Delaware Department of Correction (DOC) at the Howard R. Young Correctional Institution (HRYCI), 1301 E. 12th Street, Wilmington, New Castle County, Delaware.

5.     At all times relevant herein, Defendant Stanley W. Taylor (Taylor), was Commissioner of the Delaware Department of Correction, with an office located at 245 McKee Road, Dover, DE 19904. Taylor was the legal custodian of all prisoners housed at HRYCI and was responsible for the safe, secure and humane housing of those prisoners. At all times relevant hereto, Taylor acted under color of state law.

6.     At all times relevant herein, Defendant Raphael Williams (Williams) was the warden of HRYCI. Mr. Williams was the legal custodian of all prisoners housed at HRYCI, and was responsible for the safe, secure and humane housing of those prisoners. At all times relevant hereto, Mr. Williams acted under color of state law.

7.     At all times relevant herein, Sitta B. Gombeh-Alie, M.D. (Alie) was the medical director for Correctional Medical Services, Inc. and/or Correctional Medical Services of Delaware, Inc. Upon information and belief, Alie was responsible for the medical care and treatment of DOC inmates, including, but not limited to, those housed at HRYCI.

8.     At all times relevant herein, Muhammad Arif Niaz, M.D. was the medical site director for Correctional Medical Services, Inc. and/or Correctional Medical Services of

2

Delaware, Inc. assigned to HRYCI. Upon information and belief, Alie was responsible for the medical care and treatment of DOC inmates housed at HRYCI.

9.      At all times pertinent, Correctional Medical Services, Inc. (CMS) was a Missouri corporation which had contracted with DOC to provide medical services to inmates such as plaintiff.

10.     At all times pertinent, Correctional Medical Services of Delaware, Inc. (CMS-DE), was a Delaware corporation which had contracted with DOC to provide medical services to inmates such as plaintiff.

11.     At all times that CMS and/or CMS-DE was or were the medical care provider(s) to DOC, they were obligated by contract and by law to provide medical health care to inmates such as plaintiff that met the standards of the local community

12.     CMS and/or CMS-DE was or were the medical provider(s) to DOC from July 2000 to June 2002, and then again from July 2005 through the present, and, as such, acted under color of state law at all times therein.

13.     CMS and/or CMS-DE is responsible for the actions of its employees, agents, and/or servants in their care and treatment of Plaintiff.

14.     The identities and locations of the John Doe Medical Personnel, who participated in the violations described herein, are currently unknown to plaintiff and will be determined through discovery.  At all times relevant hereto, these individuals have acted under color of state law.

15.     The identities and locations of the John Doe Correctional Personnel, who participated in the violations described herein, are currently unknown to plaintiff and will be

determined through discovery.  At all times relevant hereto, these individuals have acted under color of state law.

## BACKGROUND

16.     First Correctional Medical-Delaware, LLC (FCM-DE) was a corporation which had contracted with DOC to provide medical services to inmates in Delaware prisons, including HRYCI, from July 1, 2002 through June 30, 2005.

17.     Soon after FCM began its contract with DOC on July 1, 2002, FCM began to complain to DOC and Taylor about the difficulty of getting DOC employees to cooperate with sick call and transporting inmates for outside visits. At the same time, DOC and Taylor began complaining to FCM that it was not living up to its obligations under the contract with DOC.

18.      In early 2005, Taylor and DOC requested an audit of the prison health system by the National Commission on Correctional Health Care (NCCHC). This audit disclosed many deficiencies in the performance by FCM. The deficiencies were well known to Taylor and DOC, as they were long standing deficiencies.   These deficiencies were repeatedly noted in the monthly Medical Review Committee minutes from 2002 through 2005.

19.     Even after Taylor determined that FCM was not going to remain the medical vendor for DOC prisons beyond June 30, 2005, he did not do as State law requires and ask for bids for the contract. Instead, he made the decision to replace FCM with CMS without putting the contract out for bid. In making his decision, he did not require CMS to provide any assurance that it could handle the transition on short notice, or that it could rectify all of the deficiencies that had been identified during the tenure of FCM.

20.     The Mutual Separation Agreement entered into between DOC and FCM was dated July 13, 2005 and was signed by Taylor on July 15, 2005 on behalf of DOC.  The terms of the Mutual Separation Agreement include the following paragraphs:

       1.     Discontinue Operations.  FCMD shall discontinue its operations under the Contract to provide health care to inmates in Delaware correctional facilities, and further obligations under the Contract shall terminate, as of June 30, 2005, subject to the terms of this Agreement.

       2.     Cooperation and Transition.  FCMD and DOC agree to work in cooperation to effect a prompt and professional transition of the Contract obligations from FCMD to the provider with whom DOC contracts to provide inmate health care following FCMD's separation ("Subsequent Provider"). Where necessary or appropriate to support effective, quality patient care, FCMD will provide to the DOC and the Subsequent Provider relevant information as reasonably requested by DOC or such Subsequent Provider.

       3.     Transfer of Inmate Care Responsibility.  DOC has made arrangements for continuing health care by another qualified provider to assume patient care duties and responsibilities without interruption following termination of FCMD's services, and such provider has agreed to and shall assume all patient care responsibilities at such time.

21.     CMS asked out of its contract with DOC in 2002, in part because of a dispute over compensation rates.  When CMS contracted with DOC to provide medical services to inmates, such as plaintiff, beginning on July 1, 2005, it asked for, and received, a significant increase over the compensation rate to FCM.

22.     The quality of medical care provided to inmates in DOC institutions, such as HRYCI, actually became worse immediately after CMS took over the contract from FCM on July 1, 2005.  Some of the doctors and nurses who had been employed by FCM stayed on to work for CMS, but many did not.  Therefore, after CMS took over, there were severe staffing shortages, including a lack of medical personnel to treat inmates at HRYCI.  As a result, many inmates, such as plaintiff, failed to receive adequate medical screenings and failed to receive adequate care for serious medical conditions.

## FACTUAL ALLEGATIONS

23.    On or about August 14, 2005, plaintiff was involved in an accident wherein he fractured his left wrist after falling from a ladder. Plaintiff received medical treatment at the St. Francis Hospital emergency room in Wilmington, Delaware. At that time, plaintiff's wrist was placed in a splint, and he was instructed not to remove it until he received follow-up orthopedic care.

24.    On or about August 25, 2005, plaintiff was stopped by the Wilmington Police Department on suspicion of driving under the influence. Plaintiff's left wrist was still in a splint at that time. After plaintiff's stop, it was discovered that a capias had been issued on plaintiff for child-support arrears. Plaintiff was taken into custody and transported to HRYCI for pretrial detention.

25.    At plaintiff's medical intake screening, plaintiff advised the unknown CMS and/or CMS-DE and/or DOC personnel who interviewed him that he had fractured his left wrist on August 14, 2005 and that he was not supposed to remove his splint. Nonetheless, these personnel removed the splint.

26.    Then, notwithstanding the fact that plaintiff had an unhealed wrist fracture which required medical attention, plaintiff was assigned to general population in the HRYCI pretrial unit with no restrictions.

27.    Shortly after his arrest, a violation of probation (VOP) was filed against plaintiff for a prior charge in New Castle County Superior Court due to his failure to report to his probation officer. Plaintiff was sentenced by the Superior Court to 90 days at Level V (incarceration), suspended after 60 days at Level V for Level III probation.

28.    Upon information and belief, during plaintiff's 60-day VOP sentence at Level V, plaintiff remained in the pretrial detention unit at HRYCI.

29.    Plaintiff was ultimately released from HRYCI on or about October 19, 2005, upon the expiration of his 60-day VOP sentence.

30.    During the course of plaintiff's incarceration, plaintiff experienced significant and severe pain in his left wrist as a result of the fracture.

31.    Plaintiff repeatedly requested medical attention from the HRYCI infirmary, to no avail.

32.    On or about September 7, 2005, plaintiff filed a Medical Grievance because he had received no treatment for his wrist pain. Plaintiff's Medical Grievance was not acknowledged until October 7, 2005, when he received a memorandum from Inmate Grievance Chair named "Sgt. M. Moody" indicating that his grievance would be "forwarded to the Medical Department for processing." Plaintiff received no further response to this grievance before he was released from HRYCI.

33.    Upon plaintiff's release from HRYCI, he, through counsel, unsuccessfully attempted to obtain copies of his medical records from CMS, CMS-DE, and/or HRYCI. Specifically, by letter dated December 8, 2006, plaintiff's counsel requested a copy of plaintiff's entire medical file in the possession of CMS, CMS-DE, and/or HRYCI. This letter was accompanied by a HIPAA-compliant medical authorization. Nonetheless, CMS, CMS-DE, and/or HRYCI failed to respond to plaintiff's records request.

34.    Plaintiff then contacted his State Representative, Rep. Hazel Plant, who advised him to direct his request to a specific individual at HRYCI, Diane Jergensen. Plaintiff's counsel did so on April 12, 2007, forwarding another letter request for records and a HIPAA-compliant

medical authorization. Again, CMS, CMS-DE, and/or HRYCI failed to respond to or even acknowledge this records request.

35.    Shortly thereafter, plaintiff contacted Rep. Plant again, who suggested he contact one Scott Altman, a "quality assurance monitor" employed by CMS at its Dover, Delaware offices. Plaintiff contacted Mr. Altman directly, and was advised that his medical records would be sent promptly to counsel. As before, however, CMS, CMS-DE, and/or HRYCI failed to provide any medical records or even acknowledge plaintiff's records request. To date, plaintiff has never received a copy of his medical records, nor has he even received an acknowledgment of his records request.

## **COUNT I**

36.    Plaintiff realleges Paragraphs 1 through 35 of this Complaint and incorporates them herein by reference.

37.    At all times relevant herein, defendants Alie, Niaz, and the John Doe Medical Personnel continuously breached the applicable community medical and mental health standards, the standards set forth by the American Academy of Family Physicians, NCCHC Standards, and all other applicable standards of care for screening, diagnosing, and treating plaintiffs' medical problems while he was incarcerated at HRYCI from August 25, 2005 to approximately October 19, 2005.

38.    Defendants Alie, Niaz, and the John Doe Medical Personnel acted negligently, intentionally, wantonly and willfully toward plaintiff in the following ways:

(a)    They failed to perform an adequate intake screening for medical problems, knowing that such failure could cause plaintiff to have serious medical problems go untreated.

(b)    They removed and/or permitted others to remove the splint on plaintiff's fractured left wrist when he received his intake screening;

(c)    They placed and/or permitted others to place plaintiff into the general population at HRYCI with an unsplinted fracture of the left wrist;

(d)    They failed to provide and/or permitted others to fail to provide the necessary evaluations and treatment for plaintiff after he began to display and complain of pain and discomfort to his unsplinted fractured left wrist;

(e)    They failed to provide and/or permitted others to fail to provide the necessary evaluations and treatment for plaintiff after they became aware that he had filed a medical grievance for the severe pain and discomfort in his unsplinted fractured left wrist;

(f)    They continued to neglect and/or permitted others to neglect plaintiff's physical and mental condition until he was released; and

(g)    They failed to adequately supervise those persons responsible for the medical intake screening of inmates; and

(h)    They failed to adequately supervise those persons responsible for the handling of or response to inmate medical grievances; and

(i)    They failed to adequately supervise those persons responsible for the evaluation and treatment of inmate medical issues.

39.    CMS was deliberately indifferent to plaintiff's serious medical needs in ways which violated his civil rights pursuant to 42 U.S.C. § 1983, and which violated his 8th Amendment right to be free of cruel and unusual punishment.

40.    Defendants John Doe Medical Personnel, Alie, and/or Niaz, through their procedures, customs and policies, displayed deliberate indifference to the serious medical needs

of plaintiff while he was incarcerated at HRYCI from August 25, 2005 to approximately October 19, 2005, in that:

(a)    They failed to hire a competent regional medical director to oversee the medical care of incarcerated inmates such as plaintiff.

(b)    They failed to maintain adequate staffing levels of nurses and physicians at HRYCI to enable the nurses and physicians to provide minimally adequate care. The inadequate staffing levels made it impossible for the staff to meet the applicable standards of care in cases such as plaintiff's.

(c)    They failed to provide adequate screening, and/or implement policies, practices, and/or procedures for adequate screening for medical problems for inmates such as plaintiff because of its own financial concerns knowing that failure to provide such screening would cause certain inmates such as plaintiff to suffer serious medical problems which could have been prevented or effectively treated with adequate screening.

(d)    They failed to provide adequate medical care, and/or implement policies, practices, and/or procedures for adequate medical care for inmates with medical problems such as plaintiff when they knew that failure to provide such care would cause certain inmates such as plaintiff to suffer serious medical problems which could have been prevented or effectively treated with adequate care.

41.    As a result of the violations of his civil rights by CMS, CMS-DE, Alie, and/or Niaz, and/or their employees and the negligent and intentional actions of CMS, CMS-DE, Alie, and/or Niaz and/or the employees of CMS and/or CMS-DE, plaintiff sustained injuries, including, but not limited to, pain and discomfort in the left wrist, arthrofibrosis of the left wrist with ligamentous disruption of the radial carpal ulnar joints, and left carpal tunnel syndrome,

some or all of which may be permanent. He has suffered in the past, both physically and emotionally, and will continue to suffer in the future as a result of the permanent nature of his injuries.

**WHEREFORE,** plaintiff demands judgment against defendants Alie, Niaz, the John Doe Medical Personnel, CMS, and CMS-DE, jointly and severally, for general and special damages, together with attorney's fees pursuant to 42 U.S.C. § 1988(b), expert witness fees pursuant to 42 U.S.C. § 1988(c), interest, and the costs of this action.

## COUNT II

42.     Plaintiff realleges Paragraphs 1 through 41 of the Complaint and incorporate them herein by reference.

43.     At all times relevant herein, defendants Alie and Niaz and the John Doe Medical Defendants were the employees, agents, and/or servants of defendants CMS and/or CMS-DE, or each of them, and acting within the course and scope of their duties as such.

44.     Defendants CMS and/or CMS-DE, or each of them, are jointly and severally liable for the negligence of defendants Alie and Niaz and the John Doe Medical Defendants, as their employees, agents, and/or servants, as aforesaid, by virtue of the agency relationship and the doctrine of *respondeat superior*, as aforesaid.

**WHEREFORE,** plaintiff demands judgment against CMS and CMS-DE, jointly and severally, for general and special damages, together with interest and the costs of this action.

## COUNT III

45.     Plaintiff realleges Paragraphs 1 through 44 of the Complaint and incorporate them herein by reference.

46.     Prior to August of 2005, defendant Williams knew or should have known that the medical and mental health care provided at HRYCI was not meeting the appropriate standards of care and that the treatment of inmates with medical needs by medical vendors such as CMS and/or CMS-DE was inadequate and a violation of their civil rights.

47.     Williams had a non-delegable duty under the law to provide for the serious medical needs of inmates, such as plaintiff. A fractured wrist is a serious medical need, particularly when it is unsplinted.

48.     Williams knew or should have known that after CMS and/or CMS-DE took over the contract from FCM in July of 2005, CMS and/or CMS-DE had inadequate medical staffing at HRYCI and that as result, it was impossible for the medical staff to provide any reasonably adequate care to inmates such as plaintiff.

49.     Instead of exercising his authority under the law to insist that adequate medical care be given to prisoners, such as plaintiff, Williams allowed CMS and/or CMS-DE to continue to operate in a substandard manner, which he knew would lead to inmates such as plaintiff suffering cruel and unusual punishment from that lack of care.

50.     Williams was deliberately indifferent to plaintiff's medical needs in a way which violated his civil rights pursuant to 42 U.S.C. § 1983, and which violated his 8th Amendment right to be free of cruel and unusual punishment.

51.     Upon information and belief, Williams was also aware that CMS and/or CMS-DE and its staffers at HRYCI had a pattern and practice of providing inadequate medical intake screening to inmates. However, Williams was deliberately indifferent to this pattern and practice, and did nothing to stop it.

52.    Williams' failure to stop this practice allowed Plaintiff to be misscreened and/or misdiagnosed by CMS and/or CMS-DE, and placed in the wrong correctional environment for his injury, and therefore was a violation of his civil rights.

53.    As a result of the violations of his civil rights by Williams, as aforesaid, Plaintiff sustained injuries, including, but not limited to, pain and discomfort in the left wrist, arthrofibrosis of the left wrist with ligamentous disruption of the radial carpal ulnar joints, and left carpal tunnel syndrome, some or all of which may be permanent. He has suffered in the past, both physically and emotionally, and will continue to suffer in the future as a result of the permanent nature of his injuries.

**WHEREFORE,** plaintiff demands judgment against defendant Williams for general and special damages, together with attorney's fees pursuant to 42 U.S.C. § 1988(b), expert witness fees pursuant to 42 U.S.C. § 1988(c), interest, and the costs of this action.

## COUNT IV

54.    Plaintiff realleges Paragraphs 1 through 53 of the Complaint and incorporates them herein by reference.

55.    Prior to August of 2005, defendant Stanley Taylor, as then Commissioner of the Delaware Department of Correction, knew that the medical care provided at HRYCI was not meeting the appropriate standards of care and that the treatment of inmates with serious medical and by the medical vendors was inadequate and a violation of their civil rights.

56.    Taylor had a non-delegable duty under the law to provide for the serious medical needs of inmates, such as plaintiff. A fractured wrist is a serious medical need, particularly when it is unsplinted.

57.    Taylor knew that after CMS and/or CMS-DE took over the contract from FCM in July of 2005, CMS had inadequate medical staffing at HRYCI and that, as a result, it was impossible for the medical staff to provide any reasonably adequate care to inmates, such as plaintiff.

58.    Instead of exercising his authority under the law to insist that adequate medical care be given to prisoners, such as plaintiff, Taylor allowed CMS to continue to operate in a substandard manner, which he knew would lead to inmates such as plaintiff suffering cruel and unusual punishment from that lack of care.

59.    Taylor was deliberately indifferent to plaintiff's serious medical needs in a way which violated his civil rights pursuant to 42 U.S.C. § 1983, and which violated his 8th Amendment right to be free of cruel and unusual punishment.

60.    As a result of the violations of his civil rights by Taylor, as aforesaid, plaintiff sustained injuries, including, but not limited to, pain and discomfort in the left wrist, arthrofibrosis of the left wrist with ligamentous disruption of the radial carpal ulnar joints, and left carpal tunnel syndrome, some or all of which may be permanent. He has suffered in the past, both physically and emotionally, and will continue to suffer in the future as a result of the permanent nature of his injuries.

**WHEREFORE,** plaintiff demands judgment against defendant Taylor for general and special damages, together with attorney's fees pursuant to 42 U.S.C. § 1988(b), expert witness fees pursuant to 42 U.S.C. § 1988(c), interest, and the costs of this action.

## <u>COUNT IV</u>

61.    Plaintiff realleges Paragraphs 1 through 60 of the Complaint and incorporates them herein by reference.

62.     Defendants Alie, Niaz, and/or the John Doe Medical Personnel breached the applicable community medical and standards, the standards set forth by the American Academy of Family Physicians, NCCHC Standards, and all other applicable standards of care for screening, diagnosing, and treating plaintiff's medical problems while he was incarcerated at HRYCI from August 25, 2005 to approximately October 19, 2005.

63.     Defendants Alie, Niaz, and/or the John Doe Medical Personnel acted negligently, intentionally, wantonly and willfully toward plaintiff in the following ways:

(a)     They failed to perform or ensure that an adequate intake screening for medical and problems was performed on plaintiff, knowing that such failure could cause plaintiff to have medical problems go untreated.

(b)     They failed to implement policies, procedures, and/or practices for adequate medical screenings to be performed of new inmates such as plaintiff, knowing that such failure could cause new inmates such as plaintiff to have medical problems go untreated.

(c)     Even after plaintiff's initial medical screening, at which time he was found to have a splint on his left wrist, they failed to perform or order to be performed the necessary tests and evaluations to determine the nature of plaintiff's impairments.  They also failed to order appropriate treatment for plaintiff's obvious serious mental and medical impairments.

(d)     They removed and/or permitted to be removed the splint from plaintiff's left wrist after plaintiff's initial medical screening and before he was placed in the general population at HRYCI.

(e)     They failed to provide the necessary evaluations and treatment for plaintiff after he began to display signs of physical pain and discomfort.

(f)     They failed to provide the necessary evaluations and treatment for plaintiff

after they became aware that he had filed a Medical Grievance on or about September 7, 2005 complaining of wrist pain.

(g)    They continued to neglect plaintiff's physical condition until he was released from HRYCI.

64.    Defendants Alie, Niaz, and/or the John Doe Medical Personnel were deliberately indifferent to plaintiff's serious medical needs in ways which violated his civil rights pursuant to 42 U.S.C. § 1983, and which violated his 8th Amendment right to be free of cruel and unusual punishment.

65.    As a result of the violations of his civil rights by defendants Alie, Niaz, and/or the John Doe Medical Personnel, or each of them, and the negligent and intentional actions of those defendants, as aforesaid, plaintiff sustained injuries, including, but not limited to, pain and discomfort in the left wrist, arthrofibrosis of the left wrist with ligamentous disruption of the radial carpal ulnar joints, and left carpal tunnel syndrome, some or all of which may be permanent. He has suffered in the past, both physically and emotionally, and will continue to suffer in the future as a result of the permanent nature of his injuries.

**WHEREFORE,** plaintiff demands judgment against defendants Alie, Niaz, and/or the John Doe Medical Personnel, jointly and severally, for general and special damages, together with attorney's fees pursuant to 42 U.S.C. § 1988(b), expert witness fees pursuant to 42 U.S.C. § 1988(c), interest, and the costs of this action.

## COUNT V

66.    Plaintiff realleges Paragraphs 1 through 65 of the Complaint and incorporates them herein by reference.

67.     Plaintiff's repeated requests for medical attention for the pain and discomfort in his left wrist were ignored by the John Doe Correctional Personnel.

68.     Plaintiff's repeated complaints of pain and discomfort in his left wrist were ignored by the John Doe Correctional Personnel.

69.     Other than the October 7, 2005 memorandum from Inmate Grievance Chair Sgt. M. Moody, plaintiff's September 7, 2005 Medical Grievance was ignored by the John Doe Correctional Personnel.

70.     The John Doe Correctional Personnel were deliberately indifferent to plaintiff's serious medical needs in a way which violated his civil rights pursuant to 42 U.S.C. § 1983, and which violated his 8th Amendment right to be free of cruel and unusual punishment.

71.     As a result of the violations of his civil rights by the John Doe Correctional Personnel, as aforesaid, plaintiff sustained injuries, including, but not limited to, pain and discomfort in the left wrist, arthrofibrosis of the left wrist with ligamentous disruption of the radial carpal ulnar joints, and left carpal tunnel syndrome, some or all of which may be permanent. He has suffered in the past, both physically and emotionally, and will continue to suffer in the future as a result of the permanent nature of his injuries.

**WHEREFORE,** plaintiff demands judgment against the John Doe Correctional Personnel, jointly and severally, for general and special damages, together with attorney's fees pursuant to 42 U.S.C. § 1988(b), expert witness fees pursuant to 42 U.S.C. § 1988(c), interest, and the costs of this action.

## <u>COUNT VI</u>

72.     Plaintiff realleges Paragraphs 1 through 71 of the Complaint and incorporates them herein by reference.

73.     Defendants CMS and/or CMS-DE failed to produce a true and correct copy of plaintiff's medical records within 45 days of their receipt of plaintiff's request for his medical records, as required by 10 *Del. C.* § 3926(a).

74.     Pursuant to 10 *Del. C.* § 3926(c), defendants CMS and/or CMS-DE are liable to plaintiff for a civil penalty in the amount of $25.00 per day from January 23, 2007, being the 46th day after plaintiff's initial records request and the first day defendants CMS and/or CMS-DE were delinquent in providing said records, and continuing to the date on which plaintiff's medical records are ultimately produced.

**WHEREFORE**, plaintiff demands judgment in his favor and against defendants CMS and CMS-DE, jointly and severally, in the amount of $25.00 *per diem* commencing on January 23, 2007, together with interest, costs, and any other relief the Court deems appropriate.

PERRY & SENSOR

By: /s/  Michael L. Sensor
       Michael L. Sensor, Esquire
       Delaware Bar ID No.  3541
       One Customs House, Suite 560
       P.O. Box 1568
       Wilmington, DE 19899-1568
       Telephone: (302) 655-4482
       Attorney for Plaintiff

Dated: August 24, 2007

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Carter, Daryl J.

**DEFENDANTS**
Taylor, Stanley W; Williams, Raphael; Gombeh-Alie, Sitta B.; Niaz, Muhammad Arif; Correctional Medical Services, Inc.; Correctional Medical Services of Delaware, Inc.

**(b)** County of Residence of First Listed Plaintiff    New Castle
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    Sussex
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Michael L. Sensor, Esquire, Perry & Sensor
P.O. Box 1568, Wilmington, DE 19899 (302) 655-4482

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | **PERSONAL INJURY** | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Med. Malpractice | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | ☐ 365 Personal Injury - Product Liability | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | **PERSONAL PROPERTY** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 370 Other Fraud | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 371 Truth in Lending | | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 380 Other Personal Property Damage | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 385 Property Damage Product Liability | | | ☐ 950 Constitutionality of State Statutes |
| | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | |
| | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | | |
| | ☐ 442 Employment | **Habeas Corpus:** | | |
| | ☐ 443 Housing/ Accommodations | ☐ 530 General | | |
| | ☐ 444 Welfare | ☐ 535 Death Penalty | | |
| | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | |
| | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | |
| | ☒ 440 Other Civil Rights | ☐ 555 Prison Condition | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. §§ 1983 and 1988

Brief description of cause:
Prison medical treatment

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $
Unliquidated damages

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):

JUDGE

DOCKET NUMBER

DATE
8/24/07

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. _____ 0 7 - 5 1 7 _____

# ACKNOWLEDGMENT
# OF  RECEIPT  FOR AO FORM  85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF _____ 8 _____ COPIES OF AO FORM 85.

_____         Sharon E Kleiman
(Date forms issued)              (Signature of Party or their Representative)

                                 Sharon E. Kleiman
                                 (Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action